## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STEEL, PAPER AND FORESTRY,  ) | |
| RUBBER MANUFACTURING, ENERGY,  ) | |
| ALLIED INDUSTRIAL and SERVICE  ) | |
| WORKERS INTERNATIONAL UNION,  ) | |
| and its LOCAL 13-857, a LABOR  ) | |
| ORGANIZATION,  ) | |
|   ) | |
|       Plaintiff,  ) | |
| v.       ) | No.  06-CV-364-TCK-FHM |
|   ) | |
| CONOCOPHILLIPS COMPANY,  ) | |
|   ) | |
|       Defendant.  ) | |

### OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment (Doc. 23), wherein Defendant ConocoPhillips Company ("Conoco") moves the Court to vacate an arbitration award in favor of Plaintiff United Steel, Paper and Forestry, Rubber Manufacturing, Energy, Allied Industrial and Service Workers International Union ("Union").

### I.    Factual Background

Defendant Conoco is an integrated energy company that operates a refinery in Ponca City, Oklahoma.  Plaintiff Union is a labor organization that represents several employees at this refinery. As a result of a formal bargaining process, Conoco and Union entered into a Collective Bargaining Agreement ("CBA") dated March 31, 2002.  The CBA contains a "Management's Rights Provision," which provides that "[h]iring, maintaining order, and discipline or discharge for just cause are solely the responsibility of management."  (Def.'s Ex. A at Art. 11.)  Pursuant to its "management rights," Conoco enacted Rules of Conduct (Def.'s Ex. C) and an Absence Control Policy (Def.'s Ex. N), both of which are relevant to this case.

1

It is undisputed that, on June 15, 2005, Mark Branson ("Branson") arrived to work approximately fifteen to twenty minutes late without calling his supervisor prior to arriving at work. The following day, on June 16, 2005, Conoco terminated Branson.   Such termination is memorialized by letter dated June 16, 2005 from Jim R. Mueller ("Mueller"), Conoco Maintenance Manager, to Branson (the "Termination Letter").  The Termination Letter provides:

> On April 11, 2005, you were put on notice that your overall work record had become unacceptable and that any further transgression would not be tolerated.  You were given a final warning and suspension which specified that any future instance in which you were found to have violated the Rules of Conduct would result in termination of your employment.
> On Wednesday, June 15, 2005, *you reported to work late and failed to inform your supervisor of your absence prior to your scheduled start time.  This is a violation of the Rules of Conduct.*  As a result of your actions, your employment . . . is terminated effective today, June 16, 2005.

(Def.'s Ex. M (emphasis added).)[1]  Branson is a Union member and therefore subject to the terms and conditions of the CBA.  In accordance with the CBA, Union grieved Branson's discharge and submitted the discharge to arbitration.  The sole issue for arbitration was whether Conoco had "just cause" to discharge Branson and, if not, to determine the appropriate remedy.[2]

Arbitrator Leroy R. Bartman ("Arbitrator") conducted an arbitration hearing on April 26, 2006.  On June 22, 2006, Arbitrator sustained Union's grievance in part, found that Conoco had not shown just cause for the termination, and ordered that a formal "Last Chance Letter" be issued to Branson.  As interpreted by the Court, the key rulings of Arbitrator include:  (1) rejection of Union's

---

[1]  The April 11, 2005 Letter referenced in the Termination Letter will be referred to in this Order as the "April 11, 2005 Letter."

[2]  The CBA does not define "just cause" but instead allows an arbitrator to make a determination of whether "just cause" existed in instances of discipline or discharge.  (*See id.* ("[N]o arbiter has the authority to rule on Article 11 with the exception of the determination of just cause in the first sentence of Article 11.").)

position that Conoco's "Absence Control Policy" is a stand-alone policy that is separate and apart from the "Rules of Conduct" and acceptance of Conoco's position that the Absence Control Policy "defines and elaborates upon [Conoco's] expectations . . . while the Rules of Conduct delineate the various specific rules and the progressive discipline allowed" (Def.'s Mot. for Summ. J., Ex. D at 11-12); (2) finding that the Termination Letter did not provide sufficient notice because it did not identify a particular infraction (*id.* at 12); (3) finding that Branson's behavior on June 15, 2005 did not actually violate Rule of Conduct 4, 8, or 9, even when the Rules of Conduct are read in conjunction with Absence Control Policy (*id.* at 13-14); (4) finding that the April 11, 2005 Letter was not a proper "Last Chance Letter" because it was unilaterally written by Conoco and does not "in the Arbitrator's opinion" meet the requirements of a proper "Last Chance Letter" (*id.* at 14); and (5) finding that Conoco demonstrated ambivalence about the rules and "failed to enforced its own Rules of Conduct when they did not terminate Branson for his serious violations of the Rules of Conduct and Absence Control Policy" (*id.* at 14).[3]

In his conclusion, Arbitrator stated:

> [Conoco] has . . . relied upon a flawed letter of termination and they also relied upon what was termed a last chance warning.  They have also exhibited a laxity in the enforcement of their own Rules of Conduct and Absence Control Policy. [Conoco] has also failed to properly notify the Union and [Branson] of the specific rules violated in its letter of termination. [Conoco] also failed to thoroughly investigate and review the events leading up to Branson's discharge.

(Def.'s Mot. for Summ. J., Ex. D at 15.)  Thus, the body of the decision includes a substantive determination that the Rules of Conduct cited by Conoco were not actually violated by Branson, although the conclusion refers exclusively to procedural problems with Branson's termination.

---

[3]  At the arbitration hearing, it was not disputed that Branson was actually late on the day in question and that Branson did not notify his supervisor that he would be late.

On July 14, 2006, Union filed a Complaint in this Court pursuant to 29 U.S.C. § 185, seeking enforcement of the Arbitration Award following Conoco's refusal to comply with the Arbitration Award.  On August 7, 2006, Conoco filed a counterclaim moving the Court vacate the Arbitration Award.  In the parties' Joint Status Report, the parties represented that the "case should be disposed of on cross motions for summary judgment."  Accordingly, the Court did not set the matter for trial but instead established a dispositive motion deadline.  Subsequently, Conoco filed the motion for summary judgment before the Court.  Union did not file a cross motion for summary judgment but did state in its response brief that "to the extent Defendant fails in its summary judgment quest, judgment should be granted for Plaintiff for its request that the arbitration award be enforced."  Union further moved "that an order of enforcement of the arbitration award be entered by the court."

## II.    Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party bears the burden of showing that no genuine issue of material fact exists.  *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citation omitted).  The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.*  However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in his complaint but must "set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).

## III.    Standard of Review of Arbitration Award

The standard of review of arbitral awards in labor disputes is "among the narrowest known to the law."  *Local No. 7 United Food and Comm'l Workers Int'l Union v. King Soopers, Inc.*, 222

4

F.3d 1223, 1226 (10th Cir. 2000).  In reviewing such an award, district courts are "not authorized to reconsider the merits of any award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *Id.* (quotation omitted).  Courts have adopted this policy of exceedingly narrow judicial review because the parties to a collective bargaining agreement have contracted for an arbitrator, and not a court, to resolve their disputes. *Id.*  In addition, arbitrators are "indispensable agencies in a continuous collective bargaining process" and they "sit to settle disputes at the plant level – disputes that require for their solution knowledge of the custom and practices of a particular factory or of a particular industry reflected in the particular agreements." *Id.* at 1226-27. (quotation omitted).

An arbitrator's discretion, however, is "not unlimited," and an arbitrator "does not sit to dispense his own brand of industrial justice." *LB&B Assocs., Inc. v. Int'l Brotherhood of Electrical Workers, Local No. 113*, 461 F.3d 1195, 1197 (10th Cir. 2006) (quotation omitted).  Instead, an arbitrator is "confined to interpretation and application of the collective bargaining agreement," and the arbitrator's award must "draw its essence from the collective bargaining agreement." *King Soopers*, 222 F.3d at 1227 (quotation omitted).  An award does not draw its essence from the collective bargaining agreement if (1) "it is contrary to the express language of the contract;" (2) it "is so unfounded in reason and fact [and] so unconnected with the working and purpose of the agreement as to manifest an infidelity to the obligation of the arbitrator;" or (3) "if viewed in light of its language, its context, and any other indicia of the parties' intention, it is without factual support." *Id.* (quotation omitted).  An award must be upheld "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Id.*  As the party attacking the Arbitration Award, Conoco bears the burden of proving that the award should

be vacated.  *Conoco, Inc. v. Oil, Chemical, & Atomic Workers Int'l Union*, 26 F. Supp. 2d 1310, 1316 (N.D. Okla. 1998).

**IV.     Discussion**

Conoco argues that the Arbitrator's decision does not "draw its essence" from the CBA for four reasons: (1) the Arbitrator ignored or refused to apply Rule of Conduct 4, which in fact provides "just cause" for Branson's termination; (2) the Arbitrator's finding that prior leniency renders a termination without just cause is not grounded in the CBA or the industrial common law; (3) the Arbitrator's finding that Conoco's failure to issue a proper Termination Letter and a proper Last Chance Agreement is not grounded in the CBA or the industrial common law; and (4) the Arbitrator's finding that Conoco's failure to thoroughly investigate Branson's termination is not factually accurate and is not grounded in the CBA or the industrial common law.

**A.     Rule of Conduct No. 4**

Conoco does not allege error in the Arbitrator's rejection of Rules of Conduct 8 and 9 as potential bases for the termination.  Instead, Conoco alleges that the Arbitrator "refused to apply Rule of Conduct No. 4 which requires an employee to inform his supervisor of absence prior to scheduled start time." (Def.'s Reply 1.) Therefore, Conoco contends Arbitrator "usurped" Conoco's collectively-bargained "management rights," set forth in Article 11 of the CBA, to establish Rules of Conduct.   Union responds by asserting that "there was a difference in interpretation as to how Rule 4 worked vis-a-vis Rule 8 and its Absence Control Policy" and that "[t]he fact that the arbitrator did not take the company's view is not grounds to vacate the arbitrator's award."  (Pl.'s Resp. 12.)

Conoco relies significantly on the Tenth Circuit decision in *Conoco, Incorporated v. Oil,*

*Chemical & Atomic Workers International Union*, No. 87-1482, 1988 WL 163062 (10th Cir. Sept. 12, 1988) (unpublished).  In that case, the court first addressed whether Conoco's Rules of Conduct should be considered a "binding" part of the CBA, such that an arbitrator's decision that is contrary to or inconsistent with the Rules of Conduct automatically fails to "draw its essence" from the CBA. The Tenth Circuit held that "[a]lthough the rules of conduct are not wholly binding as a part of the [CBA], they are essential guidelines to determine whether the arbitrator based his award on an interpretation of the [CBA] or instead founded the award on some body of thought, feeling, policy or law that is outside the [CBA]." *Id.* at * 3 (citing *Ethyl Corp. v. United Steelworkers*, 768 F.2d 180 (7th Cir. 1985)).  The court then considered whether the district court erred in reversing an arbitrator's decision to reinstate an employee who was terminated for stealing $5,900 worth of equipment from Conoco.  The penalty of termination was expressly provided for in the Rules of Conduct, which stated that the discipline for stealing shall be determined "'by the nature and frequency of the infraction and may include termination.'" *Id.* at * 2 (quoting Rules of Conduct). Nonetheless, the arbitrator reinstated the employee on grounds that, although stealing was normally a dischargable offense, discharge in that case too severe a penalty because Conoco had not discharged other employees who had been involved with some form of stealing.  *Id.* at * 1.  The Tenth Circuit, affirming the district court, held that the arbitrator "based his decision on a principle not found anywhere in the [CBA] or the industrial common law when he stated employees must be treated equally, regardless of the severity or frequency of the offense." *Id.* at * 3.  The court reasoned that "the arbitrator had no authority to ignore these specific rules of conduct and, instead, impose a contrary all-or-nothing rule of discipline." *Id.*  Conoco contends that, like the arbitrator in that case, Arbitrator "ignored" that Branson's termination was expressly authorized by Rule of

Conduct 4.

The Court rejects Conoco's argument and finds reliance on the 1988 *Conoco* decision to be misplaced. First, as explained in the 1988 *Conoco* decision, Conoco's Rules of Conduct serve only as guidelines in determining whether an award draws its essence from the CBA; they are not incorporated into the CBA as binding definitions of "just cause." Second, it is clear Arbitrator did not ignore or refuse to apply Rule 4 in determining whether there was just cause for Branson's termination. Instead, Arbitrator expressly considered whether Rule 4 applied to the infraction at issue and found that it did not. In this regard, Arbitrator stated:

> Rule No. 4 - Absent Without Leave discusses and defines absent as being absent from work for three (3) days without notifying Company/Supervisor. In the opinion of the Arbitrator, this rule is not applicable or relevant to the case at bar. The reference to notifying a supervisor clearly is connected to an absence of at least three (3) days. If the company intended to apply the call-in requirement to tardiness it did not factually do so in Rule 4. While [Branson] was late, he did show up for work, all be it 20 minutes late. He was not absent without leave for three (3) days. In the Arbitrator's opinion, Rule 4 does not apply.

(Def.'s Ex. D at 14.) Conoco argues that the Arbitrator's conclusion regarding Rule 4 is "not only erroneous but also blatantly contradicts [its] established Absence Control Policy and Rules of Conduct" and that "[t]he Arbitrator's distinction between tardies and absences is artificial having no basis in either [Conoco's] Absence Control Policy or Rules of Conduct." (Def.'s Mot. for Summ. J. 11.) It is not, however, this Court's role to determine if Arbitrator rendered a correct interpretation of the Rules of Conduct and the Absence Control Policy. Instead, the award must be upheld "as long as the arbitrator is even arguably construing or applying the [CBA] and acting within the scope of his authority." *King Soopers*, 222 F.3d at 1227 (quotation omitted). Clearly, Arbitrator was construing the CBA and Rule of Conduct 4 in reaching his "just cause" conclusion. He referenced Rule 4 and explained his reasoning as to why Rule 4 did not apply to Branson's

infraction on July 15, 2005.  Rather than ignoring the Rule of Conduct altogether or dispensing his own brand of industrial justice, Arbitrator merely determined the Rule of Conduct did not apply to the specific infraction and termination in question.

Finally, in the Court's view, Arbitrator's conclusion regarding Rule 4 is "not so unfounded in reason and fact" as to "manifest an infidelity to the obligation of the arbitrator."  *See Kennecott Utah Copper Corp. v. Becker*, 186 F.3d 1261, 1270 (10th Cir. 1999) (explaining that even "serious errors" are beyond review so long as they do not manifest an infidelity to the arbitrator's obligations).  Instead, the question of whether or not Arbitrator should have construed the definition of absences in the Absence Control Policy to include "tardies," such that Branson's infraction fell into the prohibition in Rule of Conduct 4, is the type of interpretive determination that is shielded from judicial review.  *See, e.g.*, *Champion Boxed Beef Co. v. Local No. 7 United Food and Comm'l Workers Int'l Union*, 24 F.3d 86, 89 (10th Cir. 1994) (reversing district court's vacating of an arbitration award and stating that "a court may not overrule the arbitrator's factual findings or contract interpretations because we disagree with them").

B.      Prior Leniency to Branson

Conoco's second allegation of error relates to the following conclusion by Arbitrator:

In addition to all of the above, [Branson] . . . has had three (3) serious violations of the work rules for which he could have been summarily discharged at a D discipline level; but, the Company chose to not discharge him.  The record indicates that the Union did not grieve any of [Branson's] transgressions during the three (3) suspensions which recognizes the Union's belief that he could have been terminated. [Branson] also since 1990 had an egregious absence record of approximately twenty-seven (27) absences, some of which caused him to be suspended along with numerous other written warnings.  The Company failed to enforce its own Rules of Conduct when they did not terminate Branson for his serious violations of the Rules of Conduct and Absence Control Policy.

(Def.'s Ex. D at 14.)  Conoco argues that such a principle is not founded in the CBA or the industrial

common law.  Conoco further claims this reasoning strips management of its rights under Article 11 of the CBA to exercise discretion over disciplinary matters.  Union made no arguments on this particular allegation of error.

In support of its argument, Conoco cites *Rush v. United Technologies*, 930 F.2d 453, 455 (6th Cir. 1991), wherein a district court addressed, in the first instance, whether an employee's termination was for "just cause."  The court found just cause despite the employer's prior leniency toward a particular infraction, holding that "[t]he fact that the company arguably had condoned Rush's deviation from the norm does not bind them forever to this policy."  *Id.*  The court further reasoned, however, that "[i]t was made abundantly clear to [the employee] that his past practices were no longer to be tolerated" and that "it was clear that management's attitude had changes, and [the employee] was adequately informed of the new outlook both verbally and in writing."  *Id.*  The *Rush* case is not persuasive because (1) it was not in the context of an arbitrator's determination of just cause, which is subject to a more limited form of judicial review, and (2) management in that case informed the employee that it had changed its attitude toward a certain offense and that past practices would no longer be tolerated.  Conoco also cites to a footnote in the unpublished decision of *Bixler v. El Paso Natural Gas Company*, No. 92-1322, 1994 WL 220372, at *22 n.11 (D.N.M. 1994).  This case is unpersuasive for the same reasons.  *See id.* (stating that prior leniency has no effect on just cause determination where policy had been "expressly clarified" via a memo and a more stringent policy had been put in place).

The Court finds that Conoco has not met its burden of showing that the Arbitrator was wholly outside the bounds of his authority in considering past leniency toward Branson as to absences and tardies.  Conoco has provided no cases that would indicate that such a consideration

by an arbitrator is outside the bounds of his "just cause" determination when "just cause" is undefined in the CBA.  The cases cited by Conoco indicate that prior leniency can, in fact, be relevant to a court's determination of "just cause" under certain circumstances.  Further, a Tenth Circuit decision  involving Conoco states that "past practices of discipline are part of the industrial common law."  *Conoco, Inc. v. Oil, Chemical & Atomic Workers Int'l Union*, No. 87-1482, 1988 WL 163062 (10th Cir. Sept. 12, 1988) (unpublished); *see also Conoco, Inc. v. Oil, Chemical & Atomic Workers Int'l Union*, 26 F. Supp. 2d 1310, 1313 (N.D. Okla. 1998) (finding no error in arbitrator's reliance on "seven test" method considering various factors, including factor regarding "forewarning of probable consequences" of the conduct).  The Court therefore has no basis to believe consideration of past practices of the employer toward the employee is an improper factor in the overall "just cause" determination.

       C.    <u>Notice Deficiencies</u>

Conoco argues that, because nothing in the CBA requires certain forms of notice, Arbitrator impermissibly strayed from his authority by reasoning that Branson received insufficient notice prior to his termination.  The Court disagrees.  As explained above, when "just cause" is not defined, an arbitrator is free to consider outside sources in determining whether "just cause" exists.  *See Conoco, Inc. v. Oil, Chemical& Atomic Workers Int'l Union*, 26 F. Supp. 2d 1310, 1313 (N.D. Okla. 1998).  A court in this district, in a case involving Conoco, expressly considered whether an employee had proper "forewarning of the probable consequences" in making his overall determination of "just cause."  *See id.* at 1314.  Thus, case law indicates that consideration of this factor is within the proper scope of an arbitrator's "just cause" determination, and Conoco has not met its burden of proof on this allegation of error.

D.      Failure to Investigate

Conoco argues Arbitrator's conclusion that Conoco "failed to thoroughly investigate and review the events leading to Branson's discharge," (*see* Def.'s Ex. D at 15),  is unfounded in reason and fact.  This sentence appears in the conclusion of Arbitrator's decision and is not explained. However, it is clear from the decision that Union presented evidence and arguments on this issue at the hearing.  (*See* id. at 10 ("The Union also contends that the Human Resources Department did not become involved in the issuance of the termination.  Rather, his supervisor without conducting any investigation into the circumstances involved issued the termination letter . . . .").  In addition, the Court has reviewed the transcript and cannot conclude that this statement in the Arbitrator's decision is wholly unsupported by the evidence presented.  Thus, Arbitrator's factual finding in this regard is controlling.  *See Kennecott Utah Copper Corp. v. Becker*, 186 F.3d 1261, 1267 (10th Cir. 1999) (stating that the "arbitrator's factual findings are beyond review").

**V.      Conclusion**

The Court has rejected every allegation of error and therefore does not find that Arbitrator's decision fails to draw its essence from the CBA and the industrial common law.  Defendant's Motion for Summary Judgment (Doc. 23) is DENIED.  Finding no remaining questions of fact or law, the Court GRANTS summary judgment in favor of Plaintiff.  Plaintiff is hereby ORDERED to submit a proposed form of Judgment to be entered forthwith.

**ORDERED this 10th day of December, 2007.**

**TERENCE KERN**
**UNITED STATES DISTRICT JUDGE**

12